## Case No. 10,727.

### PARKER v. BRANT et al.

[1 Fish. Pat. Cas. 58.] 1

Circuit Court, E. D. Pennsylvania. April, 1850.

PATENTS—INJUNCTION—PRIOR ADJUDICATIONS—
PATENTEE'S TITLE—AVERMENTS.

1. A party who relies upon the verdict of a jury, and the judgment of a court of law, for the establishment of his title, as a foundation of his claim to be quieted in the possession and enjoyment of it, and for protecting him against infringement by others, must aver, in his bill, that such proceedings have taken place. Grier, Circuit Justice.

[Cited in American Bell Tel. Co. v. Southern Tel. Co., 34 Fed. 804; Wirt v. Hicks, 46 Fed. 71.]

2. On a motion for an injunction, based upon prior adjudications in favor of a patent, the defendant may show that the title was not fairly in controversy in the cases which professed to try it; or that some material fact was then unknown, or some apposite argument overlooked; and the court, if satisfied that in truth such was the case, would not hold itself concluded by the former adjudications. Kane, District Judge.

3. But the considerations which would justify a judge in renewing the discussion of a patentee's title, after solemn hearing and judgment at law, should be such as, if presented to his view after a trial at law, would have induced him to set aside the verdict. Kane, District Judge.

[These were bills in equity by Oliver H. P. Parker against Joseph Bryant and others.] These were suits in equity, for the infringement of the patent of Zebulon and Austin Parker, [granted Oct. 19, 1829,] more particularly described in the case of Parker v. Hulme [Case No. 10,740]. Upon a motion for provisional injunction against the defendants, objection was made that the bills contained no averment of prior adjudication, to support the application.

Mr. Titus, for complainant.
Watts, Mallery & Penrose for defendants.

Before GRIER, Circuit Justice, and KANE, District Judge.

GRIER, Circuit Justice. I take this occasion to say, that the court has no doubt of the validity of the complainant's patent. That question has been fully settled here, by a trial at law, of extraordinary duration, and closeness of research. The report of the case of Parker v. Hulme, [supra,] by my Brother KANE, who presided at the trial, and information derived from the affidavits and printed works, which have been read on both sides, during the present hearing, as well as the acquaintance of the subject which I derived while engaged in the trial of another case growing out of this patent, leaves no doubt on my mind, that the complainant's patent is not only valid, but of the greatest importance to the country.

I may add, on the part of both of us, that we approached the question without any pre-

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

vious leaning in favor of the rights asserted by Mr. Parker, as an inventor, and it was only upon a more than usually close scrutiny of the facts that we came to the conclusion which we now express.

Indeed, it is a subject of regret that the public has been so tardy in acknowledging the merits of the Messrs. Parker as inventors. Their improvement as described in the patent before us, is not less ingenious and profound than useful. In France, M. Fourneyron received the highest honors and most liberal rewards, for introducing into use this very improvement, after it had been invented in this country by the Messrs. Parker. And it was not until the circulation of Fourneyron's paper on Turbines in this country, that the public attention was fairly called to the valuable improvement of the Messrs. Parker.

Of the infringement by the defendants, the court has no doubt. The wheels which they use are direct and positive violations of the complainant's rights, as appears by the affidavits on behalf of the defendants, and the models which they themselves have submitted to the court. In point of fact the complainant has established his right to the injunction which he prays. But I do not wish to establish the precedent in this court, that a party who relies upon the verdict of a jury and the judgment of a court of law, for the establishment of his title, as the foundation of his claim to be quieted in the possession and enjoyment of it, and for protecting him against infringement by others, shall omit, as the complainant has here omitted, to aver in his bill, that such proceedings at law have taken place. Without such averment, the ground of the action of the court may be misunderstood, and the defendant may not be properly apprised beforehand, of the case which he has to meet. In these cases, we are the more ready to lay hold of the admission, as we feel a reluctance to stop two hundred mills from grinding a bushel of grain, or sawing a board, without giving the defendants a chance of making a settlement or compromise. On the other hand, it is by no means our intention to compel this complainant to relitigate his patent, already established at law, against a combination of two hundred wealthy mill-owners in this district, who are, as these defendants allege, using machines of which the model above described is the representation. By an amendment of his bill, the complainant may overcome his present technical difficulty.

In all this, I am authorized to say, that my Brother KANE fully concurs with me.

The bills having been amended, the motion was subsequently heard before Judge KANE on bill, answer, and affidavits.

KANE, District Judge. The patent under which the complainant claims, is an ancient one, having been issued in 1829, and renew-

ed by the commissioners in 1845. Its character and history have, on former occasions, been investigated in this court very fully; the first, on the trial of the case of Parker v. Perkins [Case No. 10,745], at which Judge Grier presided, and afterward more at large, in the case of Parker v. Hulme, which was tried before me; and recently again, in a full court, during the elaborate argument of the motion for an injunction against the present defendants, before the amendment of the bills. These investigations, conducted by counsel of the highest ability, with the aid of scientific mechanicians, who have no superiors anywhere, led the minds of two juries, and of both the judges, to the same conclusion, namely, that the patent was a valid one. It has, therefore, passed into the category of those which equity exerts its preventive interposition to protect against infractions.

Since the motion was last before the court, the defendants have filed answers, which, for the purposes of the present question, are of course to be regarded only as affidavits. These deny the novelty of the invention in very express terms, and profess also to traverse the use of it.

I need not say this mere denial of the complainant's title, by the defendants, can avail them nothing at this time. He is in possession, under an ancient right, solemnly confirmed by a public proceeding, in which its validity was put in issue, to which the defendants might have made themselves parties, if they would, and of which they had just the same sort of notice they have of other binding acts of the government. His title has, moreover, been submitted to the scrutiny of the court in a controversy at law, honestly and well contested, and has been formally established by verdict and judgment. It is true, that a defendant is in no wise precluded by all this from impugning the patent in the appropriate manner and by pertinent proofs; but for the present, such facts advise us judicially, that the complainant is in recognized and apparently lawful possession under his asserted title. They make for him a strong prima facie case; and a court of equity can no more allow third persons to disturb his continued enjoyment, upon the allegation that his patent can be invalidated hereafter, than it will permit trespassers to cut down a neighbor's trees, upon offering to prove that he has no title to his farm. A patent, vouched as this is, must be invalidated before equity will suffer it to be violated.

No doubt, upon an application like this, the defendants might show that the title was not fairly in controversy in the cases which professed to try it—or that some material fact was then unknown, or some apposite argument overlooked—and the court, if satisfied that such in truth was the case, would not hold itself concluded by the former adjudications. It is safe, however, to say that the considerations which would justify a judge, at this stage of an equity cause, in renewing the discussion of a patentee's title after solemn hearing and judgment at law, should be such as, if presented to his view after a trial at law, would have induced him to set aside the verdict. After-acquired evidence, of doubtful character or doubtful bearing, imputations of collusion, unsustained by apparent probability or strong proof—views of the evidence, or the law, which, however ingenious or original, might have been met by new facts, or answered by other arguments: these, any, or all of them, should hardly be potent enough to deprive a patentee of the protection of equity for the time. If a verdict for the complainant would stand in spite of all that is now before me, I can not call upon him to renew the vindication of his long-continued right at an interlocutory hearing.

But the evidence which has been presented to me, so far from proving that the verdicts have been erroneous, is not even such as to cast a serious doubt on the question of novelty. It consists of a printed description in "White's Century of Inventions," a book published in 1822, of a machine which is supposed to resemble the complainant's—and a deposition of a millwright, Mr. Squiers, who saw a machine, many years ago, of which he gives a model, that might at first glance be supposed to embody the same principle. But the device of Mr. White seems to have been regarded by its author as a wheel of impact and not of reaction: he calls it a wheel of "impulse," and refers its efficiency to the velocity of the "jet" with which the water "strikes" against the floats—while the appearance of the water in his drawing, as it approaches the wheel, and after leaving it, shows that, if intended for a reaction wheel at all, it must have been among the very worst contrived of its class. And the model by which Mr. Squiers illustrates his testimony—made, he says, by himself—represents to me nothing else but a clumsy imitation of Parker's machine, in which the principle is overlooked, and the proportion between the areas of supply and discharge so mutilated as to make it absolutely worthless.

Besides this evidence, I have the expression, by the defendants, of a confident belief that the principle of Parker's patent was well known before the year 1827, in several states of the Union, but by whom, or in what parts of those states, is not specified—and a reference to two cases in other circuits, which were decided, it is said, against the patentee. Now, were the cause on its trial, the law would not permit me to hear evidence of this supposed prior use and knowledge of a plaintiff's invention, without a much more definite specification beforehand, of place and person. Besides, I have not forgotten, that when Parker v. Hulme was on trial, we had much evidence of prior knowledge of this invention in different parts

of the United States, and that it was all explained away by other proof, or disbelieved, as I thought, properly, by the jury. I can not assign, in anticipation, a higher efficacy to evidence which is not yet adduced. As to the adjudication elsewhere, the records of them are not here; and the verdicts may have been very right upon the evidence, or the issues, before those courts, and yet be entirely without bearing on the question I am to decide. To allow me to repose on them for my judicial action as relieving me from the influence of the former, or cotemporaneous proceedings in this very court, the cases should come in a form unquestionably authentic, and fully reported.

The remaining question is, have the defendants infringed the patent as the complainant alleges? I have looked through the answers which they have filed, and I am constrained to say, that, whether regarded as affidavits merely, or as answers, they do not, by any means, meet the bills frankly. They deny, it is true, but by inference and arguments, or in general terms, not by a definite traverse of the substance of the charge. They abound in negatives pregnant, following the words of the bill, yet avoiding that direct and specific and peremptory contradiction of its import, which the rules of chancery pleading enjoin. Indeed, they admit in detail, while denying in formal words, and must be understood by the court, in justice to the respectable parties from whom they proceed, as only negativing the use of the plaintiff's invention constructively by negativing his property in it. That is to say, they admit that they are using machines substantially like his, but they deny that he was the first to invent such machines; thus resolving the question of use into that of title, which I have already considered.

Injunctions accordingly till hearing or further order.

[For other cases involving this patent. see note to Parker v. Hatfield (Case No. 10,736).]